IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF TARGET PHONE #1, CURRENTLY LOCATED AT THE ATF COLUMBIA FIELD OFFICE LOCATED AT 1835 ASSEMBLY STREET, SUITE 309, COLUMBIA, SOUTH CAROLINA 29201 | Case No. 3:25-cr-00077 _____ |
| IN THE MATTER OF THE SEARCH OF TARGET PHONE #2, CURRENTLY LOCATED AT THE ATF COLUMBIA FIELD OFFICE LOCATED AT 1835 ASSEMBLY STREET, SUITE 309, COLUMBIA, SOUTH CAROLINA 29201 | Case No. _____ |
| IN THE MATTER OF THE SEARCH OF TARGET PHONE #3, CURRENTLY LOCATED AT THE ATF COLUMBIA FIELD OFFICE LOCATED AT 1835 ASSEMBLY STREET, SUITE 309, COLUMBIA, SOUTH CAROLINA 29201 | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Joseph A. Bode, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of **Target Phones #1, #2, and #3**, which are currently in law enforcement possession, and the seizure of electronically stored information described in Attachment B.

1

2.      I am an investigator and law enforcement officer of the United States within the meaning of Title 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered to conduct investigations of and to make arrests for the offenses enumerated in Titles 18, 19, 21, 26, and 31 of the United States Code, and other related offenses. In January of 2022, I was hired as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), an agency within the Department of Justice, and remain employed in the same role today. I am currently assigned to the ATF Charlotte Field Division, Columbia Field Office. My duties involve the investigation of federal firearms offenses, associated violent crimes, and narcotics offenses. Prior to serving as an ATF Special Agent, I was a state law enforcement officer with the North Carolina State Bureau of Investigation and a probation/parole officer with the North Carolina Department of Public Safety. I have been working in law enforcement for 10 years. I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator Training Program and ATF Special Agent Basic Training Program. Based on my training and experience as an ATF Special Agent, I am familiar with the aforementioned federal criminal laws.

3.      I know cellular telephones are often used by individuals to facilitate the commission of criminal acts, including the distribution of illegal narcotics and the unlawful procurement of firearms by prohibited persons via person-to-person sales. Further, I am aware that incriminating evidence is often located within text messages, photos, and videos on cellular telephones. Additionally, call logs for incoming, outgoing, and missed calls, stored contact lists, and location information have proven to be valuable evidence in criminal cases. Moreover, I am familiar with technology, such as Cellebrite mobile data transfer equipment, that allows law enforcement investigators to harvest data, such as incoming and outgoing text messages, photos, videos, call logs, and contacts, from cellular telephones. I also know that it is common for

2

individuals involved in criminal activity to use cell phones subscribed in a name other than their own, and to use "pre-paid" cellular telephones for which no real subscriber information is available.

4.     The facts in this affidavit come from (1) my personal observations, knowledge, and investigation; (2) my training and experience; (3) law enforcement databases and cellphone records; and (4) from information obtained from other agents and witnesses whom I believe to be truthful and reliable. The facts in this affidavit are also based on information gained from interviews with cooperating defendants and informants, whose reliability is established separately herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that **Jake Lowmon RIVERS Jr** and **Eddie Marcel RIVERS Sr.** committed violations of the following statutes:

   a.   21 U.S.C. § 841(a)(1), which criminalizes the distribution of controlled substances, and which requires the Government to prove (1) that the person distributed or possessed with the intent to distribute the controlled substances alleged in the charging document, and (2) that the person did so knowingly or intentionally.

   b.   21 U.S.C. § 846, which criminalizes a conspiracy to commit a drug offense against the laws of the United States, and which requires the Government to prove (1) that there was an agreement between two or more persons to commit

the drug offense described in the charging document, (2) that the person knew of this agreement, and (3) that the person knowingly and voluntarily participated in or became a part of this agreement or conspiracy.

c.  18 U.S.C. § 922(a)(1)(A), which criminalizes engaging in the business of dealing in firearms or ammunition without a federal license, and which requires the Government to prove (1) that the person did not have a federal firearms license, (2) that the person engaged in the business of dealing in firearms or ammunition, and (3) that the person did so willfully.

d.  18 U.S.C. § 924(c), which criminalizes using or carrying a firearm during and in relation to a drug trafficking crime or possessing a firearm in furtherance of a drug trafficking crime, and which requires the Government to prove (1) that the person used or carried a firearm and (2) that the person did so during and in relation to a drug trafficking crime which may be prosecuted in federal court. Alternatively, the Government may prove (1) that the person possessed a firearm and (2) that the person did so in furtherance of a drug trafficking crime which may be prosecuted in federal court.

6.      There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes as further described in Attachment B.

7.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction," as defined in 18 U.S.C. § 2711(3)(A)(i), that is, a district court of the

United States that has jurisdiction over the offense being investigated.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      This warrant application seeks authorization to search the following devices:

    a.  An LG Stylo 6 cellular device within a black and gray phone case containing a SIM card with ICCID number 8901260688944270618F and call number 803-704-9110 (Identified as **Target Phone #1**),

    b.  A black Samsung Galaxy A13 cellular device within a black phone case containing a SIM card with ICCID number 8901260668939308524F and call number 803-386-2088 (Identified as **Target Phone #2**), and

    c.  A gray Wiko Voix U616AR cellular device within a blue and black phone case containing a SIM card with ICCID number 8901260030938289561F with call number 803-600-0345 (Identified as **Target Phone #3**).

9.      **Target Phones #1, #2, and #3** are currently located at ATF Columbia Field Office located at 1835 Assembly Street, Suite 309, Columbia, South Carolina 29201.

10.      The applied-for warrant would authorize the forensic examination of the devices for the purpose of identifying electronically store data particularly described in Attachment B.

## PROBABLE CAUSE

### Background

11.      Beginning in early 2024, Special Agents and Task Force Officers with the ATF Columbia Field Office along with the Columbia Police Department (CPD) have been

investigating a business, **Logical CBD Products**, which is involved in the trafficking of illegal narcotics and the sale of firearms. ATF and the CPD have conducted multiple controlled purchases of illegal narcotics and firearms within the business using confidential informants (CI).

12.    Prior to the start of the investigation, the ATF Columbia Field Office conducted an interview with a source of information (SOI), who eventually became a CI for the ATF. The SOI provided the following information:

  a.  The SOI said the SOI used to buy a quarter pound, which is commonly referred to as a "QP," of marijuana to use and to sell. The SOI got marijuana, mushrooms, and Tetrahydrocannabinol "THC" vape pens from the same suppliers. The SOI identified the suppliers as **Jake Lowmon RIVERS Jr.** and **Eddie Marcel RIVERS** Sr. I showed the SOI photos of **Jake** and **Eddie RIVERS** from the South Carolina Department of Motor Vehicles (SCDMV) database. The SOI identified **Jake** and **Eddie RIVERS** in their respective photos and confirmed those were the people previously dealt with.

  b.  The SOI said **Jake and Eddie RIVERS** owned a business called Logical Logistic Vape Shop, which was ultimately determined to be called **Logical CBD Products**, located on North Main Street in Columbia, South Carolina.

  c.  The SOI said **Jake and Eddie RIVERS** sell various narcotics to include marijuana, marijuana wax, ecstasy, fentanyl, and methamphetamine.

6

d. The SOI said **Jake and Eddie RIVERS** sell narcotics at the flea market located on United States (US) Route 1 in Lexington County, South Carolina.

e. The SOI said the SOI was buying a quarter pound of marijuana for $600 from **Jake and Eddie RIVERS** once a week for approximately a two (2) year span, which totals approximately 24 pounds of marijuana.

f. The SOI said the SOI mostly dealt with **Jake RIVERS** and the SOI met **Jake RIVERS** at the flea market when the SOI was purchasing narcotics paraphernalia from **Jake RIVERS**. The SOI said after the SOI bought the paraphernalia, **Jake RIVERS** advised he had marijuana to sell as well. The SOI said **Jake RIVERS** would either bring the marijuana to the SOI or the SOI would go to **Jake RIVERS'** business to purchase marijuana.

g. The SOI was asked if **Jake and Eddie RIVERS** deal and/or have firearms, and the SOI said they have firearms. The SOI has personally seen **Jake and Eddie RIVERS** with firearms during the SOI's dealing with them.

<u>Details Regarding Controlled Purchases</u>

13.     From January 2024 to March 2024, ATF conducted controlled purchases using CIs at **Logical CBD Products**, located at 5708 North Main Street, Suite H, Columbia, South Carolina. The CIs used to conduct these controlled purchases have done previous work for the ATF and are reliable. One of the CIs has recently become an asset for the ATF and has provided credible information regarding a firearms trafficker in the Lexington County area. That CI was able to conduct a controlled purchase of two firearms from the firearms trafficker. The other CI

has been an asset for ATF for a few years and has conducted numerous controlled purchases for illegal narcotics and firearms, which have led to the arrests and indictments of numerous state and federal targets. Prior to starting this investigation, I contacted an Investigator with the Richland County Sheriff's Department (RCSD) to determine the reliability of one of the CIs being used in this investigation. The RCSD Investigator said the CI was deemed to be credible and reliable with RCSD and the Drug Enforcement Administration (DEA) after conducting controlled purchases for and providing information regarding criminal activity. I corroborated the information provided by one of the CIs through research of law enforcement databases, open-source media, and surveillance techniques. I used this information to confirm that the business, **Logical CBD Products,** and the targets of the investigation, **Jake Lowmon RIVERS Jr.** and **Eddie Marcel RIVERS Sr.**, were involved in the sale of illegal narcotics.

14.     In total, CIs purchased approximately fifty-seven (57) grams of cocaine, one hundred and seventy-one (171) tablets of ecstasy, approximately one hundred and twenty-seven (127) grams of marijuana, and four (4) firearms from **Logical CBD Products**, and more specifically from **Jake Lowmon RIVERS Jr.** and **Eddie Marcel RIVERS Sr.** Each of the controlled purchases were audio and video recorded. Each of the controlled purchases were completed with cash. After each controlled purchase, I reviewed the audio and video recordings to corroborate the CIs' account of the transactions and to identify the people visible in each video recording. The items purchased were tested and analyzed by the CPD Drug Lab and were confirmed to be the controlled substances that listed above.

15.     During the investigation, I determined that **Jake Lowmon RIVERS Jr.** was the main owner of the business, **Logical CBD Products**. The CIs usually contacted **Jake Lowmon**

RIVERS Jr. to place an order for illegal narcotics and/or firearms. When the CIs arrived at the business, they dealt directly with **Jake Lowmon RIVERS Jr.** every time and conducted most of the transactions with him. I identified **Jake Lowmon RIVERS Jr.** by comparing the video footage obtained from the CI's recording equipment during the controlled purchases to **Jake Lowmon RIVERS Jr.**'s SCDMV photograph.

16.     **Jake Lowmon RIVERS Jr.**'s brother, **Eddie Marcel RIVERS Sr.**, was also involved with the business dealings of **Logical CBD Products**. **Eddie Marcel RIVERS Sr.** was present for several controlled purchases of illegal narcotics and firearms. On one occasion, **Eddie Marcel RIVERS Sr.** sold one of the CIs a firearm. Based on a review of **Eddie Marcel RIVERS Sr.**'s criminal history and a certified conviction, I determined that **Eddie Marcel RIVERS Sr.** had been convicted of a felony, which prohibits him from possessing firearms or ammunition. I determined the person who sold the firearm was **Eddie Marcel RIVERS Sr.** by comparing video footage obtained from the CI's recording equipment during the controlled purchases with **Eddie Marcel RIVERS Sr.**'s SCDMV photograph.

17.     After reviewing the audio/video recordings of the controlled purchases, I saw **Jake Lowmon RIVERS Jr.** and **Eddie Marcel RIVERS Sr.** communicating in person and over the phone to discuss their dealings with illegal narcotics and firearms.

<u>Evidence of Use of the Business to Distribute and Store Illegal Narcotics</u>

18.     Prior to each controlled purchase, the CI would contact **Jake Lowmon RIVERS Jr.** via the telephone listed for the business, which was 803-386-2088 and **Target Phone #2**, to place the order for the illegal narcotics. The CI would arrive at the business and **Jake Lowmon RIVERS Jr.** would unlock and open the door for the CI to enter the business. Based on my

training and experience, and in the context of this business purportedly selling CBD products, locking the door of the business during business hours and opening it for specific customers is unusual for a business open to the public and suggests the business is involved in illegal activity. When the CI entered the business, **Jake Lowmon RIVERS Jr.** would either have the illegal narcotics pre-packaged for sale or would get the narcotics from a location within the business (typically a storage closet located towards the rear of the business) and then package the illegal narcotics in front of the CI. **Jake Lowmon RIVERS Jr.** had a digital scale on the main counter for the business, which, based on my training and experience, is typically used to weigh illegal narcotics prior to packaging them for sale.

<u>Evidence of the Sale of Firearms without a License</u>

19.     During this investigation, a total of four (4) firearms were purchased from **Logical CBD Products**. Each of the transactions occurred within the business. A CI bought the firearms from **Jake Lowmon RIVERS Jr.** and **Eddie Marcel RIVERS Sr.** I searched for **Jake Lowmon RIVERS Jr., Eddie Marcel RIVERS Sr.,** and **Logical CBD Products** through the ATF's federal licensee system and was able to determine the business and individuals were not Federal Firearms Licensees (FFL).

20.     The firearms were stored within the business and during one of the controlled purchases, law enforcement observed on the audio/video recording that **Jake Lowmon RIVERS Jr.** obtained a lockbox containing the firearm from a storage closet located towards the rear corner of the business.

21.     Also, during of one the controlled purchases for a firearm, the firearm was in the retail packaging for the firearm, which included the accessories and manufacturer paperwork within the packaging.

22.     When the CI purchased the firearms, the CI did not complete any paperwork to conduct a check if the CI was prohibited from possessing a firearm or ammunition, such as an ATF Form 4473, and the CI did not receive any type of bill of sale. Each of the transactions for firearms was completed with cash.

23.     Based on my training and experience, a business or individual without an FFL that is selling firearms in this manner is doing so because its customers are not legally able to purchase or possess a firearm or ammunition. Further, from June 25, 2024, to July 3, 2024, I received firearm trace summaries for each of the firearms purchased during this investigation, which tells me the "time to crime" for each firearm.  For the firearms purchased, the "time to crime" range was 22 days to 457 days.  A "time to crime" date calculates the days between the date on which the firearm was legally purchased from an FFL and the date on which it was recovered as evidence of a crime.  ATF considers a short "time to crime" range as being less than 365 days.  In the context of this investigation, a short "time to crime" range suggests the person selling the firearms is engaged in the business of dealing firearms, as defined in 18 U.S.C. § 921(a)(21)(C).[1]

_____

[1] 18 U.S.C. § 921(a)(21)(C) says "[t]he term 'engaged in the business' means—as applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms; . . ."

.        .              .

Evidence of Criminal Conduct on the Cellular Telephones Associated with the Targets of this

Investigation

24.    Additionally, there is probable cause to believe evidence of the aforementioned crimes exists on **Target Phone #2**, which utilizes telephone number 803-386-2088. The CIs communicated with **Target Phone #2** and **Jake Lowmon RIVERS Jr.**, the owner of the business, prior to going to the business to conduct controlled purchases for illegal narcotics and firearms. The communications with **Target Phone #2** included text messages, which means the device using that phone number is a cellular phone because a landline phone is incapable of text messaging. The CIs discussed the quantity and price of illegal narcotics to be purchased with **Jake Lowmon RIVERS Jr**. over the phone either through phone calls or text messages at the telephone number of 803-386-2088.

25.    On at least one occasion, one of the CIs communicated with **Jake Lowmon RIVERS Jr.** by calling or text messaging the phone number 803-600-0345, which is **Target Phone #3**. The communication resulted in the CIs purchasing some of the narcotics described above. As noted above, the communications with **Target Phone #3** included text messages, which means the device using that phone number is a cellular phone.

26.    Over the course of the investigation, and once the phone number was obtained, one of the CIs communicated with **Eddie Marcel RIVERS Sr.** by calling or text messaging the phone number 803-704-9110, which is **Target Phone #1**. One occasion of communication using that phone number resulted in the CI purchasing some of the narcotics and firearms described above. As noted above, the communications with **Target Phone #1** included text messages, which means the device using that phone number is a cellular phone.

27.     Based on my training and experience, individuals involved with the sale of illegal narcotics and firearms communicate the details of the sale of illegal narcotics and firearm through text messages and other cellular based messaging services.

<u>Intelligence Received from Historical and Prospective Call Detail Records and Cell-Site Information</u>

28.     On May 17, 2024, I obtained federal search warrants for information associated with the **Target Phones #1, #2, and #3**. I received and reviewed the call detail records for **Target Phones #1, #2, and #3** from T-Mobile. The call detail records revealed that during the span of this investigation the call numbers 803-600-0345 (**Target Phone #3**), which is associated with **Jake Lowmon RIVERS Jr.**, and 803-704-9110 (**Target Phone #1**), which is associated with **Eddie Marcel RIVERS Sr.**, had two to three International Mobile Equipment Identities (IMEI). IMEI numbers are unique to an individual cellular device. Based on this evidence, it appears that over the span of January 2024 to May 2024, cellular phone numbers 803-600-0345 (**Target Phone #3**) and 803-704-9110 (**Target Phone #1**) were associated with two to three different cellular devices. Based on my training and experience, individuals involved in the trafficking of illegal narcotics and firearms frequently change cellular devices to conceal evidence of the trafficking of illegal narcotics and firearms from law enforcement. The IMEI number for the cellular device assigned the call number, 803-386-2088 (**Target Phone #2**), which is associated with **Logical CBD Products**, remained the same over the course of the investigation.

29.     During the span of May 17, 2024, to June 4, 2024, I also have received from T-Mobile and reviewed cell-site location information to determine a pattern of business hours for **Logical CBD Products** because the hours are not posted or listed. Cell-site location information

identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site location information provides an approximate, general location of the cellular device.

30.     Typically, based on the cell-site location information, **Target Phones #1, #2,** and **#3,** which are associated with **Logical CBD Products, Jake Lowmon RIVERS Jr.,** and **Eddie Marcel RIVERS Sr.**, are utilizing cellular towers near the business, **Logical CBD Products,** during the afternoon hours during the days of Monday through Friday. I personally conducted surveillance when the cell-site location information showed that **Target Phones #1, #2,** and **#3** were utilizing the cellular tower near the business and observed that the business was operating and observed vehicles in the parking lot associated with **Jake** and **Eddie RIVERS** and vehicles for customers. Based on the cell-site location information and my surveillance, it appeared that **Logical CBD Products** is typically open for business during the days of Monday through Friday during the afternoon hours.

<u>Federal Search Warrant for Logical CBD Products Executed on June 11, 2024</u>

31.     On June 6, 2024, United States Magistrate Judge Paige J. Gossett signed a federal search warrant authorizing a search of the business, **Logical CBD Products,** located at 5708 North Main Street, Suite H, Columbia, South Carolina.

32.    On June 11, 2024, the ATF Columbia Field Office, along with the assistance of ATF's Special Response Team (SRT) 5, the CPD, and the RCSD executed the aforementioned federal search warrant at **Logical CBD Products** located at 5708 North Main Street, Suite H, Columbia, South Carolina.

33.    That search warrant authorized the seizure of the records and materials evincing control of the premises, including, but not limited to, documents, property records, any items pertaining to the ownership or control of firearms or firearms ammunition, customer and supplier information, and cellular telephones, including Subscriber Identity Module (SIM) cards contained within the cellular telephones, and any removable media within the cellular telephones, directly associated with **Logical CBD Products**, **Jake Lowmon RIVERS Jr.**, and **Eddie Marcel RIVERS Sr.**

34.    **Jake Lowmon RIVERS Jr.** and **Eddie Marcel RIVERS Sr.**, along with other individuals, were at **Logical CBD Products** during the execution of the search warrant.

35.    During the execution of that search warrant, the following items were seized from within the business and within **Jake Lowmon RIVERS Jr.'s and Eddie Marcel RIVERS Sr.'s** vehicles: 8 handguns, approximately 20 pounds of suspected marijuana, approximately 84 grams of suspected cocaine, 244 dosages units of suspected MDMA, approximately 130 grams of suspected psilocybin mushrooms, other illegal narcotics and narcotics-related items, various financial and business documents, and digital media devices, which includes **Target Phones #1, #2**, and **#3** that I am now requesting authorization to search.

36.     In total, 5 cellular devices were seized. I am requesting authorization to search 3 of the 5 cellular devices that were seized, which are referred to as **Target Phones #1, #2, and #3.** All the cellular devices seized were taken into ATF custody where they remain today.

37.     **Target Phones #2** and **#3** were seized from within the business pursuant to the aforementioned search warrant. **Target Phone #1** was seized from a 2018 Chevrolet Silverado pick-up truck bearing South Carolina license plate WJL599 pursuant to a consent search. The vehicle was parked in the business's parking lot and **Eddie Marcel RIVERS Sr.** provided consent for law enforcement to search the vehicle.

38.     On June 17, 2024, I conducted a physical examination of the cellular devices, which was authorized in the aforementioned federal search warrant. The physical examination consisted of determining the make and model of the cellular devices, determining if the International Mobile Equipment Identity (IMEI) number, which is a 15-digit number unique to each device, was visible on the cellular devices, removing the SIM card from the device and locating the Integrated Circuit Card Identification (ICCID) number, which a unique identifier for SIM cards.

39.     Based on the information received from T-Mobile, which provided the make and model of the cellular devices, IMEI numbers, ICCID numbers, and cell-site location information, I determined that **Target Phones #1, #2, and #3** were directly connected to the targets of this investigation.

40.     According to T-Mobile records and my examination, the cellular device associated with phone number 803-386-2088 was a Samsung Galaxy A13 and the SIM card for

that device had an ICCID number of 8901260668939308524F (Identified as **Target Phone #2**), the cellular device associated with phone number 803-704-9110 was a LG Stylo 6 and the SIM card for that device had an ICCID number of 8901260668939308524F (Identified as **Target Phone #1**), and the cellular device associated with phone number 803-600-0345 was a Wiko Voix U616AT and the SIM card for that device had an ICCID number of 8901260030938289561F (Identified as **Target Phone #3**).

41.    I was also able to determine that **Target Phones #1, #2,** and **#3** seized during the execution of the June 6, 2024, search warrant were associated with the aforementioned phone numbers due to the T-Mobile cell-site location information. That cell-site location information revealed that **Target Phones #1, #2,** and **#3** were utilizing a tower during the execution of the June 6, 2024, search warrant that was consistently used while the targets of this investigation were at **Logical CBD Products** during past transactions and surveillance.

42.    At the conclusion of the search warrant operation, **Jake Lowmon RIVERS Jr.** and **Eddie Marcel RIVERS Sr.** were arrested by the CPD and charged with violations of South Carolina law.

## CURRENT STATUS OF THE DEVICES

43.    **Target Phones #1, #2,** and **#3** are currently in storage at ATF Columbia Field Office located at 1835 Assembly Street, Suite 309, Columbia, South Carolin 29201. In my training and experience, I know that **Target Phones #1, #2,** and **#3** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the ATF on June 11, 2024.

.

## TECHNICAL TERMS

44.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal

computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

45.    Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at:

a. https://www.lg.com/us/cell-phones

b. https://www.samsung.com/levant/smartphones/all-smartphones/

c. https://world.wikomobile.com/f-wiko-smartphones

I know that **Target Phones #1, #2,** and **#3** have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

46.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

47.    *Forensic evidence.* As further described in Attachment B, this application seeks authorization to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Target Phones #1, #2,** and **#3** were used, the purpose of their uses, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on **Target Phones #1, #2,** and **#3** because:

d.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file

on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

e. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

f. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

g. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

48. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques,

including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

49. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

50. For the reasons set forth above, I respectfully submit there is probable cause to believe that there is evidence within the provided records and information of violations of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, 18 U.S.C. § 922(a)(1)(A), and 18 U.S.C. § 924(c), each of which is described in detail above in Paragraph 5. I submit that this affidavit supports probable cause for a search warrant authorizing the search of **Target Phones #1, #2, and #3** described in Attachment A to seek and seize the items described in Attachment B. Accordingly, I respectfully request that the Court issue search warrants for **Target Phones #1, #2, and #3**.

This affidavit has been reviewed by Special Assistant United States Attorney Matthew Sanford. I swear, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), this search warrant application was issued based on information communicated by telephone or other reliable electronic means.

Respectfully submitted,

_____
Joseph A. Bode
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE.

This 19th day of ____July____, 2024
Columbia, South Carolina

_____
The Honorable Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE